IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **South Carolina State Conference and Georgetown County Branch of the National Association for the Advancement of Colored People, FourSix Development, LLC,** and **We Do Good Work, LLC**<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>**Georgetown County**, a political subdivision of the State of South Carolina, and the members of the **Georgetown County Council** in their official capacities,<br><br>　　　　　　Defendants. | **Civil Action No. 2:22-cv-04077-BHH**<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT WITNESS STEVEN SHAW** |

## PRELIMINARY STATEMENT

Plaintiffs South Carolina State Conference and Georgetown County Branch of the National Association for the Advancement of Colored People, FourSix Development, LLC, and We Do Good Work, LLC (collectively, "Plaintiffs") submit this Memorandum in support of their Motion to exclude the testimony and the report of Steven Shaw ("Shaw"),[1] an expert witness for Defendants Georgetown County and members of the Georgetown County Council in their official capacities (collectively, "Defendants").

The testimony offered by the Defendants' expert will not assist the trier of fact in determining the merits of Plaintiffs' allegation that Defendants' policy of denying the Porter's

---

[1] The expert report at issue in this motion is Steven Shaw's Expert Report, dated June 18, 2024, and is attached hereto and hereinafter cited as "**Ex. A**". Steven Shaw's Deposition, dated October 21, 2024, is attached hereto and hereinafter cited as "**Ex. B**".

Landing zoning application ("Zoning Application") has discriminatory effect. Defendants' expert makes two findings: (1) that Georgetown County is not the appropriate Primary Market Area ("PMA") for the Plaintiffs to use for LIHTC rental development because of natural barriers in the county, substantial income disparities with residents, and the proximity of the area to Myrtle Beach; and (2) coastal areas should not be included in the market analysis because they are not a source of demand. *See* Ex. A, at 4. But Defendants' expert simply offers both findings without adequately supporting them or explaining how they are relevant to the issues raised in this case. Shaw's report and testimony do not include any disparate impact analysis, which is required under the Fair Housing Act ("FHA") to assess whether the denial of the Zoning Application had a discriminatory effect on Black residents in Georgetown County. *See* Ex. B, 61:8–13. Mr. Shaw does not have the requisite knowledge or expertise to make a disparate impact claim analysis under the FHA and does not claim to in his report or testimony.

Quite simply, Defendants' expert says nothing at all about the conclusions that Plaintiffs' expert reaches or her analysis despite Plaintiffs serving Defendants with Plaintiffs' expert report and supplement. Further, Defendants' expert does not have the expertise to offer an opinion about the overall viability of a LIHTC application. Even if he did, fair housing cases challenging the discriminatory effects of zoning ordinances typically look at the demographics of the entire jurisdiction impacted by the decision, not just those involved in a given application.

Shaw's report and subsequent testimony do not meet the standard for admissibility set by Federal Rule of Evidence 702 and *Daubert* because (1) he is unqualified; (2) his report and testimony are irrelevant; and (3) his report and testimony are not based on valid methodology. Accordingly, as set forth herein, all of Shaw's opinions should be excluded by this Court as improper and inadmissible under Federal Rule of Evidence 702.

**RELEVANT FACTUAL BACKGROUND**

This action concerns the Defendants' denial of the Zoning Application to develop 90 units of badly needed affordable housing in Georgetown County. *See* Am. Compl. ¶ 1, ECF No. 6. Defendants' denial of the Porter's Landing development will disproportionately restrict housing opportunities for Black residents of Georgetown County and perpetuate segregation. *See* Ex. C, Suppl. Expert Report of Rebecca Tippett ¶¶ 8–11, 35, 45–46 (Aug. 8, 2024).

The Georgetown County Departments of Building, Planning, and Zoning recommended that the Zoning Application be approved because it conformed with the Housing and Land Use Elements of the Comprehensive Plan, would advance the County's policy objectives relating to affordable housing, and would bring the underlying Planned Development ("PD") zoning district into conformance with current state law. *See* Am. Compl. ¶¶ 115–16. The Georgetown County Council still denied the application. *Id*.

In support of their allegations that the Defendants' policy of denying the Zoning Application has a disparate impact on Georgetown County's Black residents and perpetuates segregation Plaintiffs proffer expert witness Rebecca Tippett. Tippett has extensive experience related to fair housing, zoning, economic development and redevelopment, and land development. *See* Ex. C, at ¶¶ 1–4. Tippet's analysis of reliable data shows that the denial of the Porter's Landing project will disproportionately restrict housing opportunities for Black residents of Georgetown County as compared to White residents and will perpetuate segregation in the Porter's Landing census tract by ensuring it remains disproportionately White. *Id*. at ¶¶ 36–46. It further shows that Georgetown County's denial of the Porter's Landing project causes racial disparities because Black people are more likely to qualify for the type of housing that would have been built on the site. *Id*. at ¶¶ 19–35.

**STANDARD OF REVIEW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. A qualified expert's testimony is admissible if it "rests on a reliable foundation and is relevant[.]" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). There is no mechanistic test for determining if an expert's proffered relevant testimony also is reliable. Rather, "'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (emphasis in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 139 (1999)); *see also Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 843 (S.D.W. Va. 2018). Thus, expert testimony is admissible only if: (1) the expert is qualified, (2) the testimony is relevant, and (3) the testimony is based on reliable scientific methodology. *See Daubert*, 509 U.S. at 594–95. The court must find these elements "at the outset, … by a preponderance of proof." *Id.* at 592; *see also Kadel v. Folwell*, 620 F. Supp. 3d 339, 360 (M.D.N.C. 2022).

Federal Rule of Evidence 702, which codifies the relevancy and reliability standard set forth in *Daubert,* describes what is required to provide expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Testimony may be excluded to the extent that it relates to issues the expert has not demonstrated the qualifications to opine upon. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Furthermore, the trial judge must ensure that any scientific testimony or evidence is not only relevant, but reliable. *Kumho Tire*, 526 U.S. at 152. An expert's opinion is *reliable* if it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). While the subject of scientific testimony need not "be known to a certainty," it must be "derived by the scientific method" and "supported by appropriate validation—i.e., good grounds, based on what is known." *Daubert*, 509 U.S. at 590 (citation modified). Reliability is a "flexible" inquiry that must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

## ARGUMENT

Shaw's report and subsequent testimony do not meet the standard for admissibility set by Federal Rule of Evidence 702 and *Daubert* because (1) he is unqualified; (2) the report and testimony are irrelevant; and (3) his report and testimony are not based on valid methodology. *See Daubert*, 509 U.S. at 594–95.

First, Shaw's testimony and report do not demonstrate the qualifications required to serve as an expert on any relevant claims or defenses in this matter. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 228–29 (4th Cir. 2017) (citing *Daubert*, 509 U.S. at 588); *see also* Am. Compl. ¶ 1. Shaw does not have the training or domain expertise typically possessed by experts who analyze whether policies have a disparate impact or perpetuate segregation, (Ex. B, at 61:8–13), nor whether a Low-Income Housing Tax Credit ("LIHTC") project would be approved, (Ex. B, at 48:5–18). Shaw's lack of qualifications justifies excluding the evidence he proffered. *Compare* Ex. A, 2–3 (Qualifications), 24–25 (Resume) *with* Ex. C, at ¶¶ 1–4, 8–11; *see also Lorillard*, 878 F.2d at 800

5

(finding that expert witness with no education, training, or experience in the area in which she testified failed to satisfy Rule 702 and should have been excluded).

Second, the opinions Shaw proffers in his report and testimony regarding the correct "Primary Market Area" for the Porter's Landing development are not relevant to the claims raised by Plaintiffs and therefore will not help the trier of fact understand the evidence or determine a fact in issue. Ex. A, at 5–13; *see also* Am. Compl. ¶ 1; *Garlinger v. Hardee's Food Systems, Inc.*, 16 F. App'x 232, 236 (4th Cir. 2001) (concluding that expert's testimony was not helpful because it failed to address the "key question" at issue). Even if Shaw's assessment of the "Primary Market Area" were true, it would not have prevented Porter's Landing from having received a LIHTC award. *See* **Ex. D**, Decl. of Kim Wilbourne ¶¶ 19–24 (Jul. 21, 2025); *see also Garlinger*, 16 F. App'x at 235–36 (excluding the expert's testimony and finding that while the defendants' proffered expert's testimony was accurate – coffee served at the temperature in question would burn human skin on contact – it was not relevant to the question raised in the case – whether coffee serve at that temperature was fit for human consumption).

Third, Shaw's report and testimony are unreliable because they do not reliably apply key facts in his analysis of the correct "Primary Market Area" for the Porter's Landing development; excluding areas that would be more favorable to Plaintiffs without sufficient explanation. Ex. A, at 6–13; Ex. B, at 57:9–16; *see also* FED. R. EVID. 702; *Kumho Tire*, 526 U.S. at 153 (expert testimony was excluded, not because witness was unqualified, but because his methods were deemed unreliable in their application of the facts).

For these reasons, Shaw's report and testimony must be excluded as they are not likely to assist the trier of fact in determining the relevant issues at law.

**I.     SHAW IS NOT QUALIFIED TO SERVE AS AN EXPERT ON ANY ISSUE IN THIS CASE, INCLUDING THE CORE ISSUE BEFORE THE COURT – WHETHER THE ZONING DECISION DENYING PORTER'S LANDING IS HAVING A DISPARATE IMPACT.**

Shaw's testimony and report must be excluded because Shaw does not possess the expertise necessary to analyze or refute Plaintiffs' claims. An expert must be "qualified ... by knowledge, skill, experience, training, or education[.]" FED. R. EVID. 702. In assessing a proffered expert's qualifications, the district court must "consider the proposed expert's full range of experience and training, not just his professional qualifications." *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 282 (S.D.W. Va. 2015) (citation modified). *Daubert* requires that the expert possess expertise assessed in the context of the "nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." *Kumho Tire*, 526 U.S. at 150; *see also Radiance Found., Inc. v. NAACP*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013). Where a purported expert witness has neither satisfactory knowledge, skill, experience, training, nor education on the issue for which the opinion is proffered, that witness's testimony may be excluded. *See Radiance*, 27 F. Supp. 3d at 674.

In evaluating a proffered expert's qualifications, "[t]he trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire*, 526 U.S. at 156. *Daubert* requires that the expert possess expertise assessed in the context of the "nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony." *Id.* at 150. One knowledgeable about a particular subject need not be precisely informed about all details of issues raised in order to offer an opinion as an expert. *See Lorillard*, 878 F.2d at 799–800. An imperfect fit between, on one hand, the expert's knowledge and experience, and on the other hand, the issues before the court, impacts the weight given to the expert's testimony – not its admissibility. *See, e.g., Wheeler v. John Deere Co.*, 935 F.2d 1090, 1101 (10th Cir. 1991) (noting lack of expert specialization went to weight, not

admissibility); *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162 (4th Cir. 2012), as amended (May 9, 2012) (noting that the requirement that an expert have specialized knowledge should not be read "too narrowly"). However, "[w]here a purported expert witness has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered, that witness's testimony may be excluded." *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 639 (E.D.N.C. 2013); *see also Radiance*, 27 F. Supp. 3d at 674 (E.D. Va. 2013). If an expert admits to not having subject matter experience on a topic, the Court may prohibit the expert from testifying on that issue.[2]

Plaintiffs allege a series of challenges based under the FHA, which was enacted to bar housing discrimination on a number of fronts. *See* 42 U.S.C. § 3604. Plaintiffs allege that Defendants' denial of the Porter's Landing development site violates the FHA by disproportionately adversely affecting Black residents of Georgetown County more than White residents. Am. Compl. ¶ 1. By denying the Porter's Landing site, Defendants continue to make housing unavailable because of race in violation of 42 U.S.C. § 3604(a).

In *Texas Dept. of Hous. and Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), the Supreme Court explained that an FHA disparate-impact claim should be analyzed under a three-step, burden-shifting framework. Under the first step, the plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on

---

[2] *See e.g.*, *Freeman v. Progressive Direct Ins. Co.*, 733 F. Supp. 3d 463, 479 (D.S.C. 2024) ("Plaintiff has not demonstrated by a preponderance of the evidence that Caputo has the requisite knowledge or experience to opine about Mitchell's valuation process or methodology because Caputo admits that had not even 'heard of Mitchell in the context of vehicle valuations[.]'"); *Costello v. Mountain Laurel Assurance Co.*, C.A. No. 2:22-CV-25, 2024 WL 239849, at *11 (E.D. Tenn. Jan. 22, 2024) ("Felix has admitted that he does not have sufficient knowledge regarding Mitchell's process and underlying data to form an opinion as to the methodology's reliability. Accordingly … the Court specifically finds that Felix is prohibited from providing testimony directly addressing Mitchell's methodology.").

the protected class. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018). Under the second step, the defendant has the burden of persuasion to "state and explain the valid interest served by their policies." *Id*. (quoting *Inclusive Communities*, 576 U.S. at 541). Under the third step of the framework, and in order to establish liability, the plaintiff has the burden to prove that the defendant's asserted interests "could be served by another practice that has a less discriminatory effect." *Id*. (citing *Inclusive Communities*, 576 U.S. at 527).

Step One of the *Inclusive Communities* framework requires the plaintiff to demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class. A plaintiff must demonstrate "that the challenged practices have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale" to state a valid FHA claim based on a disparate impact theory. *Id*. at 419 (citation modified). "'[N]o single test controls in measuring disparate impact,' but the Residents must offer proof of disproportionate impact, measured in a plausible way." *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 382 (3d Cir. 2011) (quoting *Hallmark Developers, Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006)). "Typically, a disparate impact is demonstrated by statistics, and a prima facie case may be established where 'gross statistical disparities can be shown." *Id*. (citation modified); *Hansen Found., Inc. v. City of Atl. City*, 504 F. Supp. 3d 327, 338 (D.N.J. 2020). However, as the Supreme Court has repeatedly made clear, "it is not enough to simply allege that there is a disparate impact … or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005). Instead, "[a] plaintiff must show causation by statistical evidence sufficient to prove that the practice or policy resulted in discrimination. A plaintiff who 'fails to ... produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.'"

*Hansen*, 504 F. Supp. 3d at 339 (citing *Bida v. Shuster Mgmt. LLC*, No. 18-10975-KM-JBC, 2019 WL 1198960, at *4 (D.N.J. Mar. 14, 2019).

Shaw has neither satisfactory knowledge, skill, experience, training, nor education on the issue for which the opinion is proffered. In *Freeman*, the court prohibited an expert from opining on an issue he admitted he had not heard of or had sufficient knowledge of to form an opinion. 733 F. Supp. 3d at 479. Shaw testified that he is not qualified to offer expert testimony as to the core issues before the court; whether a policy caused a disparate impact or perpetuates segregation. Ex. B, at 61:8–13 ("Q. Do you have any experience conducting disparate impact analyses? A. No. Q. Do you purport to have conducted a disparate impact analysis in this case? A. No."). Shaw likewise testified that he does not have the expertise to reliably assess whether an applicant for LIHTC is likely to receive an award. Ex. B, at 48:5–18 (testifying that he is only generally familiar with the scoring criteria for LIHTC projects and did not attempt to opine on the likelihood that this project would receive an award). This Court should exclude Shaw's testimony because he is by his own admission not qualified to opine upon the relevant issues before the Court. *See Lorillard*, 878 F.2d at 800.

II.   **SHAW'S OPINION ABOUT THE CORRECT "PRIMARY MARKET AREA" FOR THE PORTER'S LANDING DEVELOPMENT IS NOT RELEVANT TO ANY CLAIMS OR DEFENSES IN THIS PROCEEDING.**

Shaw's testimony regarding the "Primary Market Area" of the Porter's Landing Development is not relevant to the pertinent inquiry before the Court. As such, it must be excluded. An expert who is qualified must provide testimony that is relevant. An expert's opinion is *relevant* if it "fit[s]" the facts of the case, meaning it has "a valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591. "This ensures that the expert 'helps the trier of fact to understand the evidence or to determine a fact in issue.'" *Sardis v. Overhead Door Corp.*, 10 F.4th

268, 281 (4th Cir. 2021) (quoting *Nease*, 848 F.3d at 229). An outmoded or inapplicable standard that "does not even apply to" the facts at issue "categorically lacks 'a valid scientific connection to the pertinent inquiry'" and is "the touchstone of irrelevancy." *Id.* at 289 (quoting *Daubert*, 509 U.S. at 592). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.* at 281; *see also Folwell*, 620 F. Supp. at 360.

In the Amended Complaint, Plaintiffs allege that Defendant's denial of the Porter's Landing development disproportionately adversely affects Black residents of Georgetown County, South Carolina in violation of the FHA. *See* 42 U.S.C. § 3604(a). Shaw's opinion about the "Primary Market Area" for the Porter's Landing development does not refute this claim. *Compare* Ex. A, at 6–13 *with* Am. Compl. ¶ 1; Ex. C, at ¶¶ 8–11, 22–25, 27–28, 35, 45–46. Shaw did not assess the discriminatory effect of the proposed PMA or the denial of the Porter's Landing project generally. Ex. B, at 61:8–13. Instead, Shaw focused on reviewing "the 2021 LIHTC application for Porter's Landing Apartments and to determine a primary market area which will meet LIHTC and SC Housing requirements." Ex. A, at 5. In his Report, Shaw defines the "Primary Market Area (PMA)" as "the geographic area from which the subject property (either proposed or existing) is expected to draw the *majority* of its residents." *Id*. at 6. In Shaw's opinion, "the PMA for the [proposed Porter's Landing development] consists of the city of Georgetown and the immediate surrounding area, including the community of Andrews. Overall, the PMA consists of most of Georgetown County, with the exception of coastal areas east of the Waccamaw River and Winyah Bay[.]" *Id*. However, Shaw's opinion on the correct "Primary Market Area" simply "does not relate to any issue in the case," and is therefore not only irrelevant, but also unhelpful. *Garlinger*, 16 F. App'x at 235.

11

Even if Shaw's opinion were correct, that would not have prevented Porter's Landing from having received a LIHTC award. The 2021 Qualified Application Plan which governed the LIHTC application process for Porter's Landing states that the market study has three purposes: 1) to ensure that the proposed development does not place too many units into the market area; 2) to ensure that the proposed units can be rented within 12 months; and 3) to ensure that market area for the proposed development does not conflict with that of another South Carolina housing-funded development. Ex. D, ¶ 21. Shaw fails to show whether his conclusion concerning the primary market area for Porter's Landing affects any of these factors. *See* Ex. B, at 29:6–30:25. To fulfill *Daubert's* demand of relevancy, "the proposed expert testimony must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 708 (D.S.C. 2019) (quoting *Nease*, 848 F.3d at 229); *see also Sardis*, 10 F.4th at 281 ("simply put if an opinion is not relevant to a fact at issue, Daubert requires that it be excluded."). Shaw's testimony is simply not relevant to any fact at issue and should therefore be excluded.

**III.    SHAW DID NOT APPLY HIS METHODS IN A RELIABLE MANNER.**

Shaw's report and testimony should be excluded because he does not reliably apply scientific or validated principles and methods to the facts of the case. Relevant testimony must also be reliable. An expert's opinion is *reliable* if it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Oglesby*, 190 F.3d at 250. While the subject of scientific testimony need not "be known to a certainty," it must be "derived by the scientific method" and "supported by appropriate validation—i.e., good grounds, based on what is known." *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795 (citation modified). Reliability is a "flexible"

inquiry that must focus "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95, 113 S. Ct. at 2797.

Finally, Shaw's testimony is not useful to the trier of fact because not only did he fail to conduct the requisite disparate impact analysis, but he also failed to identify the correct PMA for the Porter's Landing development because he did not include areas closer to the original Porter's Landing site. *See Kumho Tire*, 526 U.S. at 153. In *Kumho Tire*, the Court excluded testimony because an expert did not provide a reliable application of the principles and methods to the facts of the case.[3] When conducting a disparate impact analysis, defining a market area is an important prerequisite that determines how analysts decide whether a disparate impact or other outcomes of interest are occurring in the area. **Ex. E**, Rebecca Tippett Dep., 31:9–19 (Oct. 31, 2024). For the purposes of conducting their disparate impact analysis, Plaintiff's expert Rebecca Tippett used Georgetown County as the market area. *Id*. at 31:20–22 (Instead of using the terms "PMA" or "Primary Market Area," Ms. Tippett refers to Georgetown County as the "market area.").

Similarly to *Kumho Tire*, Shaw's methodology also fails to reliably apply the principle and methods to the housing market in Georgetown County, South Carolina. Shaw's report excluded parts of the Waccamaw Neck from his "Primary Market Area" that are included in Tippet's disparate impact analysis and are a shorter distance and drive time from Porter's Landing than are parts of mainland Georgetown County that he included. *Compare* Ex. C, at ¶¶ 14–16 *with* Ex. B, at 51:7–24. Some of those same areas are a shorter distance and drive time to Porter's Landing than they are to Myrtle Beach, the regional housing market that Shaw claimed they were more

---

[3] 526 U.S. at 155 ("The court could reasonably have wondered about the reliability of a method of visual and tactile inspection sufficiently precise to ascertain with some certainty the abuse-related significance of minute shoulder/center relative tread wear differences, but insufficiently precise to tell 'with any certainty' from the tread wear whether a tire had traveled less than 10,000 or more than 50,000 miles.").

closely connected to. *See* Ex. A, at 6; Ex. B, at 23:22–24:21, 29:15–30:4. Despite positing that the bridge was a greater physical barrier than the overland distance between Porter's Landing and remote parts of the inland portion of the county due to the potential for alternate routes, Shaw did not evaluate whether alternate routes actually existed. *Compare* Ex. A, at 6–7 *with* Ex. B, at 53:12–55:16. From North Santee, for example, there are no viable alternate routes. Shaw elided the existence of low- and moderate-income census tracts on parts of the Waccamaw Neck that are not on or near the Horry County border. *See* Ex. A, at 6–13. Shaw did not assess whether using a different PMA would materially affect either demand/lease-up for Porter's Landing or the race/ethnicity demographics of who would live in Porter's Landing. *See id*. at 11–13. Had Shaw considered these factors the PMA identified, Shaw might have landed within one of these more desirable areas. However, because Shaw's Report does not reliably include areas like the Waccamaw Neck, it will not be reliable to the trier of fact and must be excluded. *Kumho Tire*, 526 U.S. at 155.

## CONCLUSION

Based on the foregoing, none of Shaw's expert opinions are admissible. Shaw is not qualified to opine on the questions at issue in this matter. Shaw's report and testimony are immaterial to the decision before the Court. Finally, Shaw's report does not apply methods in a reliable manner. Therefore, the Plaintiffs respectfully request that the Court grant their motion, exclude all of Mr. Shaw's opinions, and prohibit Shaw from testifying in this case.

Respectfully Submitted,

August 26, 2025

*s/ Adam Protheroe*
Adam Protheroe, Fed. ID 11033
Columbia, SC
Email: adam@scjustice.org
**S.C. Appleseed Legal Justice Center**
2222 Devine Street
Columbia, SC 29205
Telephone: 803.888.6100
Facsimile: 803.779.5951

Brook Hill
Email: bhill@lawyerscommittee.org
Kelechi Agbakwuru
Email: kagbakwuru@lawyerscommittee.org
**Lawyers' Committee for Civil Rights under Law**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: 202.662.8316
Facsimile: 202.783.0857
*Admitted Pro Hac Vice*
*\*Pro Hac Vice Application Forthcoming*

Quiana-Joy Ochiagha
Email: qochiagha@naacpnet.org
**National Association for the Advancement of Colored People**
4805 Mt. Hope Drive
Baltimore, MD 21215
Telephone: 410.580.5777
*Admitted Pro Hac Vice*

Matthew Allman
Email: MJAllman@Venable.com
Joanna R. Steele*
Email: JRSteele@Venable.com
**Venable LLP**
1850 Towers Crescent Plaza, Suite 400
Tysons Corner, VA 22182
Telephone: 703.760.1600
Facsimile: 703.821.8949
*Admitted Pro Hac Vice*
*\*Pro Hac Vice Application Forthcoming*

Ana L. Jara
Email: ALJara@Venable.com
**Venable LLP**
600 Massachusetts Ave., NW
Washington, DC 20001
Telephone: 202.344.4796
Facsimile: 202.344.8300
*Admitted Pro Hac Vice*

Eva-Maria Ghelardi
Email: EGhelardi@Venable.com
**Venable LLP**
151 W. 42nd Street, 49th FL
New York, NY 10036
Telephone: 212.218.2558
Facsimile: 212.307.5598
*Admitted Pro Hac Vice*

*Attorneys for the Plaintiffs*