UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| South Carolina State Conference and Georgetown County Branch of the National Association for the Advancement of Colored People, FourSix Development, and We Do Good Work, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Georgetown County, a political subdivision of the State of South Carolina, and the members of the Georgetown County Council in their official capacities,<br><br>Defendants.<br>_____ | Civil Action No. 2:22-cv-04077-BHH<br><br>**<u>Opinion and Order</u>** |

This matter is before the Court upon Defendants' motion to partially dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 85.) Plaintiffs filed a response in opposition, and Defendants filed a reply. (ECF Nos. 99, 111.) Defendants also filed a supplement in support of their motion, apprising the Court of recent, supplemental authority relevant to their motion. (ECF No. 113.) The Court held a hearing on December 12, 2025. For the reasons explained below, the Court grants Defendants' motion.

## BRIEF BACKGROUND[1] & PROCEDURAL HISTORY

Plaintiff organizations are the South Carolina State Conference of the National Association for the Advancement of Colored People ("NAACP") and the Georgetown County Branch of the NAACP (collectively referred to as "NAACP Plaintiffs"), as well as FourSix Development, LLC ("FourSix") and We Do Good Work, LLC ("Good Work") (collectively referred to as "Developer Plaintiffs").

Defendants are Georgetown County, a political subdivision of the State of South Carolina ("the County"), and the members of the Georgetown County Council in their official capacities ("the Council") (collectively referred to as "Defendants").

Plaintiffs' amended complaint alleges violations of the Fair Housing Act, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. §§ 1981, 1982, and 1983. (ECF No. 6.) These claims arise from Defendants' denial of a zoning application filed by Georgetown Memorial Hospital to include multifamily housing among the permitted uses on a 16-acre tract of undeveloped land owned by the hospital in the County. (*Id.* ¶¶ 10, 51-52, 69.) The land was to be developed into Porter's Landing, an affordable housing development, and the development's construction hinged on the approval of the zoning application. (*Id.* ¶¶ 1, 19.) Since the filing of the amended complaint, the parties have engaged in an extensive discovery period, culminating in the

---

[1] The Court incorporates by reference the background section of its September 28, 2023, Order. (ECF No. 23.)

present motion to partially dismiss on standing grounds,[2] as well as cross-motions for summary judgment.[3]

## **LEGAL STANDARDS**

### I.    Motion to Dismiss

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Pickens Cnty. Branch of NAACP v. Sch. Dist. of Pickens Cnty.*, No. 8:23-CV-01736-JDA, 2025 WL 2844248, at *5 (D.S.C. Oct. 7, 2025) (citing *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008)).

Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In a facial challenge, the defendant contends that the complaint fails to allege facts upon which standing can be based, and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (cleaned up). That is, "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, J., concurring), *overruled on other*

---

[2] The Court notes that Defendants filed a motion to dismiss on standing grounds at the outset of this case. (ECF No. 12.) Defendants argued that all Plaintiffs lacked standing to bring this action. (*Id.*) The Court denied the motion after finding that the Developer Plaintiffs had standing. (ECF No. 23.) Thus, the Court's prior Order did not address the present question of whether the NAACP Plaintiffs have standing to bring this action, and unlike the present motion, Defendants' prior motion was a facial challenge to standing.
[3] These motions will be addressed in a separate order.

3

*grounds by Sheridan v. United States*, 487 U.S. 392 (1988). In a factual challenge, the defendant contends "there is in fact no subject matter jurisdiction, even if the pleadings are formally sufficient," *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (emphasis omitted), and the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "Unless the jurisdictional facts are intertwined with the facts central to the merits of the dispute, the district court may . . . resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (internal quotation marks omitted).

In this case, Defendants make a factual attack on subject matter jurisdiction as to the NAACP's standing, relying on extrinsic evidence outside the pleadings.

## II.     Article III Standing

The federal courts can only resolve "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. This requires a plaintiff to have a "personal stake"—known as "standing"—in the suit he brings. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). He "must be able to sufficiently answer the question: 'What's it to you?'" *Id*. (quotation omitted). To do so, a plaintiff must show three things: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Additionally, "standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quotation omitted). Rather, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*,

4

528 U.S. 167, 185 (2000). "The same principle applies when there are multiple plaintiffs." *Town of Chester*, 581 U.S. at 439. So, a plaintiff could, for example, have standing to seek damages from the defendant but lack standing to seek an injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The plaintiff bears the burden to establish Article III standing. *TransUnion LLC*, 594 U.S. at 430-31.

## ANALYSIS

Defendants seek partial dismissal of this matter. (ECF No. 85*.*) Specifically, Defendants assert that the Court should dismiss the NAACP Plaintiffs because: (1) the NAACP Plaintiffs lack associational standing because they have not identified one member who has standing to challenge the zoning application; and (2) the NAACP Plaintiffs lack organizational standing because they have not established an injury in fact. (*Id.*) Additionally, Defendants assert that the Court should dismiss the claims for declaratory and injunctive relief because neither the NAACP Plaintiffs nor the Developer Plaintiffs have established a redressable right to pursue these forms of relief. (*Id.*)

### I.  Associational Standing

Standing is "[t]he requisite personal interest that must exist at the commencement of the litigation." *Friends of the Earth*, 528 U.S. at 189. Accordingly, "standing must exist at the time suit is filed." *Equal Access Educ. v. Merten*, 325 F. Supp. 2d 655, 667 (E.D. Va. 2004). To have associational standing, an organization must show that: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit. *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). Defendants only challenge

the NAACP Plaintiffs' ability to satisfy the first prong. Defendants contend that the NAACP Plaintiff zoning application. (ECF No. 85-1 at 6.)

Associational standing requires the NAACP Plaintiffs to identify a specific member who "would otherwise have standing to sue in [his] own right." *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343, (1977)). That, in turn, requires this Court to consider the individual members' alleged injuries—which "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 409 (2013) (quotation omitted).

However, before the Court can do so, it must determine whether the NAACP Plaintiffs have, in fact, identified "at least one" member. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

In their response in opposition, the NAACP Plaintiffs rely on four "Affordable Housing Inquiry" forms that they produced in discovery and attached to their response. (ECF No. 99-1.) According to the NAACP Plaintiffs, each one of these members would have standing to bring suit because "each suffered an injury by the denial of affordable housing in their community when in need." (ECF No. 99 at 8.) Upon review, it appears that these forms were filled out by NAACP members in August and October of 2022, and each form contains a brief description of that member's current housing problems – from mold to unaffordable rent to homelessness. (ECF No. 99-1.) The NAACP Plaintiffs further argue that this case is akin to *NAACP v. Molly Darcy, Inc.*, wherein the district court found

6

that the NAACP had associational standing. No. 4:11-CV-01293-RBH, 2012 WL 4473138, at *3 (D.S.C. Sept. 26, 2012).

In *Molly Darcy*, the NAACP presented an affidavit from a member stating that she sought to dine at the defendant's restaurant during Black Bike Week, but it was closed, and that she intends to dine at the restaurant during future Black Bike Weeks. That member's averments precisely aligned with the federal claims being asserted by the NAACP in that case.

In contrast, here, the NAACP has not presented an affidavit or declaration from a member in support of associational standing. Indeed, during the hearing, counsel for the NAACP seemingly acknowledged the absence of such evidence, commenting that it has been difficult to locate members due to their unstable housing. Counsel then proposed that the Court hold an evidentiary hearing to allow the NAACP to produce a current member to testify about his standing. The Court, however, finds such a suggestion at this stage in the proceedings too little, too late. The Court notes that discovery in this action began on ***September 28, 2023***. Accordingly, the NAACP Plaintiffs have had ***ample*** opportunity to obtain evidence to support associational standing.

Moreover, the Court is not persuaded by the NAACP Plaintiffs' attempt to rely on "Affordable Housing Inquiry" forms to show its members had standing to sue as individuals when this action commenced. Even assuming these forms are admissible evidence,[4] a close review reveals that these forms contain nothing more than generalized complaints about housing made by four members in 2022, in response to a general inquiry form provided to them. Importantly, these forms do not contain any statements indicating

---

[4] Defendants argue that these statements are hearsay and that the NAACP Plaintiff failed to identify these members as witnesses during the discovery period. (ECF No. 111 at 4-5.)

that these members were even aware of the vote at issue in this action, which occurred in May 202*1*, or that these members sought to, desired to, or planned to move to Porter's Landing. Rather, the statements merely show a "free-floating desire" to obtain a better housing situation. *Pickens Cnty. Branch of NAACP*, 2025 WL 2844248, at *10 (internal quotation marks and citations omitted). *See also* ECF No. 99 at 7 (conceding that these statements are simply attestations of a "need for affordable housing"). This is insufficient.

While not controlling precedent, the Court finds this situation akin to that presented in *N.A.A.C.P. v. City of Kyle, Tex.,* 626 F.3d 233, 237 (5th Cir. 2010). In *City of Kyle*, the NAACP pointed to evidence, suggesting, in the abstract, that some minority members may be less able to afford single-family residences due to the city's revised zoning and subdivision ordinances. The Fifth Circuit found such evidence insufficient for associational standing because the alleged injury was neither concrete nor imminent. The court pointed out the absence of any evidence to show that a specific member had been unable to purchase a residence in the city as a result of the revised ordinance.

Similarly, here, the NAACP Plaintiffs have not provided *any* evidence showing that these members' unaffordable and/or poor housing situation was a result of Defendants' denial of the zoning application in May of 2021. Rather, the NAACP Plaintiffs point to generalized statements of poor housing situations by members in 2022, without any evidence or indication that these members were in the same plight at the time this litigation commenced or that these members even would likely have moved to Porter's Landing. In sum, the Court finds that the NAACP Plaintiffs fall short of showing associational standing.

That said, the standing analysis does not end with consideration of whether the NAACP Plaintiffs have associational standing, as an organizational plaintiff may also have standing to bring claims on its own behalf.

## II. Organizational Standing

An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for a distinct injury suffered by the organization itself. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Like an individual plaintiff, an organizational plaintiff must provide evidence to support the conclusion that:

> (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

The NAACP Plaintiffs argue that they have established an injury in fact because Defendants' vote denying the zoning application made their "job of ending segregation and increasing access to affordable housing in the County more difficult" and "set back [their] progress on ending the perpetuation of segregation" in the County. (ECF No. 99 at 9-10). Due to the "set back," the NAACP Plaintiffs state that they have had "to invest resources and time into addressing the problem of homelessness and racial inequity in the County." (*Id.* at 10.)

In some contexts, an organization may establish standing by alleging injuries in the form of organizational expenditures or diversions of resources resulting from the alleged unlawful conduct. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). In *Havens Realty*, the Supreme Court found a housing-counseling organization

had standing to sue Havens Realty for allegedly engaging in discriminatory racial-steering practices in violation of the Fair Housing Act because those practices "perceptibly impaired [the plaintiff organization's] ability to provide counseling and referral services for low-and moderate-income homeseekers." *Id.* at 379. *See also People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 496-97 (4th Cir. 2021) (holding that PETA had standing because its diversion of resources in response to defendant's actions impeded the organization's "efforts to carry out its mission").

But there is reason to hesitate here. Recently, the Supreme Court clarified *Havens Realty*'s holding. In *Alliance for Hippocratic Medicine*, several anti-abortion medical organizations sought to challenge a Food and Drug Administration action that eased regulations related to mifepristone, a drug used to terminate pregnancies. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 376-77 (2024). The organizations relied on a *Havens Realty* theory to establish standing, alleging that the FDA had "impaired their ability to provide services and achieve their organizational mission" and that they had to "divert[] [their] resources in response to" the FDA's actions. *Id*. at 394-95 (quotations omitted). The Supreme Court rejected this argument, re-affirming that mere issue advocacy, even when accompanied by expenditures, could not alone establish standing. *Id*. at 395. Distinguishing *Havens Realty*, the Court highlighted that HOME "not only was an issue-advocacy organization, but also operated a housing counseling service." *Id*. So, "when Havens gave . . . false information about apartment availability," it "directly affected and interfered with HOME's core business activities" because it "impaired HOME's ability to provide counseling and referral services . . . ." *Id*. The

10

Supreme Court noted that the plaintiffs in *Alliance for Hippocratic Medicine* did not allege that the FDA's action "imposed any similar impediment to the [plaintiffs'] advocacy business" and, therefore, they lacked standing. *Id.* It further stated that it is "incorrect" under *Havens* that "standing exists when an organization diverts its resources in response to a defendant's actions." (*Id.*)

Defendants contend that *Alliance for Hippocratic Medicine* forecloses the NAACP Plaintiffs' claim of organizational standing. (*See* ECF Nos. 85-1 at 7-10; 111 at 7-8.) After close review, the Court agrees.

"[T]he NAACP's mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color." (ECF No. 99 at 11) (internal quotation marks and citations omitted). In the County, "the NAACP works to address the issues of affordable housing availability for its members." (*Id.*) According to the NAACP Plaintiffs, Defendants caused a concrete injury to the NAACP as an organization because the denial of the zoning application "frustrat[ed]" the NAACP's purpose of increasing the availability of affordable housing . . . [and] drain[ed] resources to accomplish the same." (*Id.*) The NAACP Plaintiffs further argue that Defendants' choice to deny the zoning application "meaningfully hampered" the NAACP's work "to end long-term racial inequality." (*Id.* at 11-12.) Thus, the NAACP Plaintiffs state that the NAACP's "core mission" has been "perceptibly impaired" by Defendants' vote. (*Id.* at 12.)

After careful consideration, the Court finds that these assertions are insufficient under *Alliance for Hippocratic Medicine* to establish a concrete injury in fact. *See Nat'l*

*Fair Hous. All. v. Bank of Am., N.A.*, No. CV SAG-18-1919, 2025 WL 2030225, at *9 (D. Md. July 21, 2025) (finding organizational plaintiffs' alleged harms of diversion of resources and frustration of mission insufficient to show a concrete injury in fact); *see also T&R Props., Inc. v. Berlin Twp.*, No. 2:24-CV-3761, 2025 WL 1682227, at *4 (S.D. Ohio June 16, 2025) (relying on *Hippocratic Medicine* and holding that allegations that the rejection or denial of a zoning application frustrated organization's mission to eliminate unfair housing practice and caused organization to divert resources insufficient to establish standing). The NAACP Plaintiffs allege that the NAACP's purpose to create affordable housing was frustrated by Defendants' denial of the zoning application. However, "an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct." *Alliance for Hippocratic Medicine*, 602 U.S. at 394 (internal quotation marks omitted). Indeed, a "setback" to an organization's policy interests does not establish standing. *Id*. The NAACP Plaintiffs further allege that Defendants' denial of the zoning application caused a drain on the NAACP's resources. Again, this too fails to establish standing. *See id.* (holding that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way"). But the nail in the coffin is the NAACP Plaintiffs' failure to point to any actual, direct impact that the denial of the zoning application had on their ***ability*** to perform their core activities. At this stage in the litigation, it is not sufficient for the NAACP Plaintiffs to allege, in a wholly conclusory fashion, that the NAACP's "core mission" has been "perceptibly impaired" by Defendants' vote.

Indeed, a comparison to the plaintiffs in a recent Fourth Circuit case underscores the NAACP Plaintiffs' failure here to meet the direct injury-and-causation standard explained in *Hippocratic Medicine.* In *Republican Nat'l Committee v. North Carolina Board of Elections* ("RNC"), the Fourth Circuit found that the plaintiffs, national and state Republican political organizations, had standing to challenge the defendant state board of elections' refusal to comply with the Help America Vote Act of 2002. 120 F.4th 390 (4th Cir. 2024). Because the state board of elections refused to remove persons who failed to provide "their driver's license number or the last four digits of their social security number on their application" to vote, plaintiffs alleged that they were "unable to ascertain which of the 225,000 people who they allege registered improperly will be able to vote in the upcoming election." *Id.* at 397, 399. That uncertainty "stymied" plaintiffs' preexisting core missions to engage in "get out the vote" efforts for Republican voters, because they would have to expend efforts on persons who will be ineligible. *Id.* at 396-98. Thus, the court held that the *RNC* plaintiffs, like the plaintiffs in *Havens*, pointed to actual direct impact defendants' actions had on their ability to perform their core activities.

In stark contrast, here, the NAACP Plaintiffs have not shown how Defendants' denial of the zoning application harmed their ability to conduct their pre-existing activities, other than the harm following from their voluntary reallocation of resources. Accordingly, based on recent Supreme Court and Fourth Circuit precedent, the Court finds that the NAACP Plaintiffs have not sufficiently established organizational standing.[5]

---

[5] Tellingly, as noted by Defendants, the NAACP Plaintiffs "never meaningfully grapple with [*Hippocratic Medicine*] or how it can possibly be reconciled with their theory of organizational standing" in their response in opposition. (ECF No. 111 at 7-8.)

13

### III.  Article III Standing to Pursue Declaratory or Injunctive Relief

In this case, Plaintiffs have collectively pled an entitlement to declaratory and injunctive relief. (ECF No. 6 at 54-55.)[6]

When a plaintiff "seeks prospective (forward-looking relief) in the form of an injunction or a declaratory judgment, they must show that they are likely to suffer future injury" in order to satisfy Article III. *Yaw v. Delaware River Basin Comm'n Del. Riverkeeper Network*, 49 F.4th 302, 318 (3d Cir. 2022) (quoting *Lyons*, 461 U.S. at 105). The plaintiff's future injury must be "imminent." *Lujan*, 504 U.S. at 564. "A future harm is not imminent just because there is an 'objectively reasonable likelihood' that it will someday come to pass. *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 429 (4th Cir. 2025) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Instead, "the plaintiffs must show a substantial risk that" it will happen "in the near future." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," unless the plaintiff can demonstrate "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Defendants contend that, in addition to the naked assertions in the amended complaint, the NAACP Plaintiffs and the Developer Plaintiffs have not produced "evidence of ongoing or future injury based this one-time denial of rezoning for a small piece of property that would have enabled the Project to go forward." (ECF No. 85-1 at 15.)

In response, Plaintiffs state that they are not seeking a "re-do," (*id.*), but "seek relief to ward off the possibility that the troublesome event will reoccur." (ECF No. 99 at 17.)

---

[6] Although the amended complaint also seeks monetary damages, (ECF No. 6 at 55), the NAACP Plaintiffs attest that they do not seek monetary damages, (ECF No, 99 at 16 n.6), and Defendants' motion does not challenge the Developer Plaintiffs' standing to seek monetary damages. (ECF No. 85-1 at 14.)

14

Plaintiffs contend that they have "provided evidence demonstrating that they face continuing adverse effects" from the denial of the Zoning Application. (*Id.*)

> For example, the NAACP expended 'significant resources and volunteer time to advocate for the approval of the Zoning Application and the creation of the new housing units . . . at the cost of other NAACP advocacy, outreach, education, and housing assistance efforts.' The NAACP continues to expend significant time on the Zoning Application, such as the time it has spent litigating this issue.

(*Id.* at 17-18.) Additionally, Plaintiffs argue that Defendants' conduct "is part of a long-time resistance to affordable housing" and "until [Defendants] are barred from engaging in racial discrimination again, the Plaintiffs could be subject to the discriminatory behavior again." (*Id.* at 18).

In their reply, Defendants point out that there is "[n]o allegation in the Response [in opposition], nor in the record, [that] indicates the Developer Plaintiffs have any continuing or ongoing harms. (ECF No. 111 at 12.) Defendants further highlight that the record contains testimony to support that the Developer Plaintiffs have no immediate plans to develop in the County, foreclosing the Developer Plaintiffs' right to seek injunctive and declaratory relief. (*Id.* at 12-13.)

Here, Plaintiffs seek injunctive and declaratory relief so that in the future Defendants will provide affordable housing to its residents and, if Defendants are not enjoined, Plaintiffs allege that Defendants may engage in discriminatory behavior again and, as a result, they could be subject to unlawful acts and practices of discrimination. To support their entitlement to injunctive and declaratory relief, Plaintiffs point to past exposure to economic harms and, to show continuing, present adverse effects of the denial of the zoning application, Plaintiffs point to the time the NAACP has spent and continues to spend on the instant litigation. Plaintiffs also allege that the County has a

15

history of resisting affordable housing, so Plaintiffs could be subject to discriminatory behavior again.

After close review, the Court finds that Plaintiffs fail to establish injury in the injunctive and declaratory relief context. Importantly, Plaintiffs must be "immediately in danger of sustaining some direct injury" as a result of Defendants' conduct. *Valley Forge Christian Coll. V. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 477 (1984) (internal citation omitted). On the key question of what will likely happen, absent an injunction, in the immediate future, Plaintiffs provide no real evidence – only conjecture about future unlawful conduct by Defendants based on allegations of past harms and resistance to affordable housing. And, aware that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," the NAACP Plaintiffs claim that the time they have spent on this legal action is evidence of a "continuing, present adverse effect" of Defendants' misconduct. *O'Shea*, 414 U.S. at 495-96.

The Court, however, is not persuaded that the NAACP Plaintiffs have standing because they decided to spend time (and money) bringing this litigation against Defendants. *See, e.g., Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020) (holding that "[t]he alleged diversionary actions [of the organization plaintiff]– spending money to bring, fund, and participate in this litigation . . . do not divert resources from its mission. That is its mission"). The law is clear that, when the future harm is merely speculative, a plaintiff cannot backdoor standing "simply by making an expenditure based on a nonparanoid fear." *Clapper*, 568 U.S. at 416. "If the law were otherwise, an enterprising plaintiff" could conjure standing from nothing, "improperly

16

water[ing] down the fundamental requirements of Article III." *Id.* In other words, the NAACP Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* Moreover, Plaintiffs' claim that their feared future injury is sufficiently imminent is further undercut by the NAACP Plaintiffs own 30(b)(6) witness, who testified that "the County has improved in its efforts to promote affordable housing since this Porter's landing vote." (ECF No. 85-3, Neal Dep. 71:1-12.) Notably, Plaintiffs have not pointed to any evidence calling this testimony into question or otherwise supporting the imminence of their claimed future injury. As such, the Court finds that Plaintiffs lack standing to pursue injunctive and declaratory relief in this case.

## **CONCLUSION**

For the foregoing reasons, the Court **grants** Defendants' motion to partially dismiss. (ECF No. 85.) Consequently, the Court dismisses without prejudice the NAACP Plaintiffs from this action and dismisses Plaintiffs' claims for declaratory and injunctive relief.

**IT IS SO ORDERED.**

                                      /s/ Bruce Howe Hendricks
                                    United States District Judge

December 23, 2025
Charleston, South Carolina